**FILED**
Lucinda B. Rauback, Acting Clerk
United States Bankruptcy Court
Augusta, Georgia
*By jpayton at 5:59 pm, Sep 29, 2012*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| | ) | Number <u>11-10218</u> |
| THOMAS J. McFARLAND | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

This Opinion and Order addresses the following four issues:

1. Whether payments from exempt income streams lose their exempt status under 42 U.S.C. §407, 38 U.S.C. §5301, or O.C.G.A. §44-13-100(a)(2)(A) - (E) when paid to a debtor and deposited prepetition into non-exempt accounts.

2. Whether a debtor may exempt the full cash surrender value of a whole life insurance policy pursuant to O.C.G.A. §33-25-11 or whether he is limited to the $2,000.00 exemption set forth in O.C.G.A. §44-13-100(a)(9).

3. Whether prohibiting a debtor in bankruptcy from using the exemptions set forth in O.C.G.A. §33-25-11 violates the equal protection clause of the Georgia Constitution, and further violates the Bankruptcy and Supremacy Clauses of the United States Constitution.

4. Whether Debtor is entitled to exempt his Hartford annuity ("Hartford Annuity") and IRA account ("IRA"), or any portion thereof.

These are core proceedings pursuant to 11 U.S.C. §157(b) and the

Court has jurisdiction pursuant to 28 U.S.C. §1334.

## FINDINGS OF FACT

Debtor acknowledges his bankruptcy filing was precipitated by a large personal injury verdict obtained by Joylynn Hagen ("Hagen") hours before he actually filed bankruptcy. Debtor was underinsured. He acknowledges that during the pendency of the personal injury litigation, he began consulting with his bankruptcy attorney about a year before the verdict was rendered. Debtor's statement of financial affairs reflects a payment to Debtor's counsel in January of 2010. Dckt. No. 10, SOFA; Dckt. No. 146, Tr. 2004 examination, p. 69, lines 1-25. The bankruptcy petition was filed on February 2, 2011. This order addresses Debtor's attempt to claim certain exemptions to protect various assets from the reach of his creditors, namely Ms. Hagen. Debtor acknowledges at the time the bankruptcy petition was filed, he was current with all his creditors, other than satisfying Ms. Hagen's judgment. For all intents and purposes, Ms. Hagen's claim is the only claim in this bankruptcy, as the other debts have either been reaffirmed or fully addressed.

### USAA and Wachovia Accounts.

Debtor attempts to exempt the following items from the reach of his creditors: $4,000.00 deposited into a USAA money management checking account ("USAA Account") and $3,682.04 deposited

2

into a Wachovia account ("Wachovia Account") pursuant to O.C.G.A. §44-13-100(a)(2)(E).[1] (Collectively, the USAA Account and the Wachovia Account are referred to as the "Bank Accounts".)[2] Debtor also argues these funds are not property of the estate pursuant to 11 U.S.C. §541(a) and are exempt under federal non-bankruptcy law. It is undisputed that the funds deposited into these two accounts consist exclusively of military retirement payments, Social Security benefits, Veteran's Administration disability and Georgia teacher's retirement payments, but the allocation of the sums on hand between the various sources is unclear. The accounts are regular bank accounts without any retirement-type restrictions or alienations. The issue involving these two accounts is whether such payments lost their exempt status when they were paid to Debtor and placed in Debtor's non-exempt bank accounts pre-petition.

**IRA and Hartford Annuity.**

Debtor attempts to exempt $150,000.00 of his Hartford Annuity and his $20,000.00 IRA. Debtor purchased the Hartford Annuity for $150,000.00 in March 2006, which is two years before the

---

[1] Debtor acknowledges the O.C.G.A. §44-13-100(a)(6) wildcard exemption is not available for any of the exemptions addressed in this Opinion and Order.

[2] Initially, Debtor also attempted to exempt funds deposited in his Bank of America account but he has subsequently acknowledged that the funds in the Bank of America account are not exempt and has withdrawn this portion of his argument.

accident with Ms. Hagen.  Dckt. No. 150, Tr. Hr'g 9/7/11, p. 51, lines 21-25 and p. 52, lines 1-3.  The funds to purchase the Annuity came from regular monthly contributions to a mutual fund account Debtor had made since the 1980s while on active duty in the military.  During the course of his active military service, military personnel were not eligible to contribute to 401(k) type plans, but he made regular after tax dollar contributions into this mutual fund purchase plan.  In 2006, these funds were used to pay off a loan on a motor coach and the remaining funds were used to purchase the Hartford Annuity.  The benefit amount as of March 2011 was approximately $170,000.00.

The mutual fund investment account was initially with a company USPA IRA, but it was not an IRA.  Debtor transferred the money from USPA IRA to an account with Sterne Agee held at Grandview Planning Group, where his son works as a financial advisor.

The IRA is a traditional individual retirement account. In accordance with the favorable tax treatment, Debtor established the IRA in the 1980s and made regular pre-tax contributions to the account.  At some point, Debtor ceased making contributions, but he has never withdrawn any funds or taken any action to affect this account's classification as an IRA account.  In 2006, the IRA account was rolled over to Sterne Agee where it remains.

**American General Whole Life Insurance Policy**.

4

Debtor also attempts to exempt an American General Whole Life Insurance Policy with a cash surrender value of approximately $13,455.00 pursuant to O.C.G.A. §§33-25-11 and 44-13-100(a)(9).[3] Debtor initially failed to disclose this whole life policy in his bankruptcy schedules. He also failed to disclose the policy at this first meeting of creditors. At his first meeting of creditors he testified that he had reviewed all his life insurance policies in his safe deposit box and stated "I don't have any whole life, if that's the question. I - I have some level term but I don't know if it has any cash value or not." Dckt. No. 144, Tr. Hr'g 3/9/11, p. 14, lines 18-22. At the first meeting of creditors, the Trustee went on to explain that term would not have any cash value generally, and the Debtor responded "Oh, I see." Dckt. No. 144, Tr. Hr'g 3/9/11, p. 14, lines 22-24.

Then, the Debtor testified again on June 6, 2011 that he had examined all his insurance policies and they were all term policies purchased in the 1980s, and that he no longer paid any premium for it. Dckt. No. 146, Tr. Hr'g 6/6/11, pp. 38 and 67, lines 3-20 and lines 12-21. He testified that the insurance expenditure on his Schedule J was for insurance belonging to his wife and not for any insurance that belonged to him. Id. at pp. 64-

---

[3] See footnote 8, infra.

5

65, lines 25-8.

It was not until August 22, 2011 that Debtor produced two insurance policies to the Trustee: a $125,000.00 decreasing term policy issued by Old Line Life Insurance Company of America in August 1985; and a $30,000.00 whole life policy also issued by Old Line in 1984. Debtor testified that he found the policies while examining his safe deposit box for other documents the Trustee requested in connection with transfers of real property, and he did not remember he had the policies until that time. Through inquiry with the insurance company, the Trustee discovered the term policy had been cancelled in 2005 and the whole life insurance policy has a cash value of approximately $13,445.00.

Debtor disclosed this policy to the Trustee in August 2011. Dckt. No. 147, Tr. Hr'g 8/22/11, p. 16-17, lines 17-5. Premium payments for this policy and Debtor's other policies continue to be made on this policy through Debtor's military allotment, but Debtor testified he does not regularly receive a breakdown of his allotment or of the insurance policies . Id. at pp. 17-18, lines 19-21 and 8-15; Dckt. No. 166, Tr. Hr'g 1/19/2012, p. 10, lines 18-25 and p. 11, lines 1-5. The Trustee contacted Debtor's counsel at the end of October and again in the beginning of November for cooperation in liquidating the policy. On November 16, 2011, months after disclosing the existence of the whole life

6

policy, Debtor amended his bankruptcy schedules to disclose the whole life policy as an asset and attempt to exempt its full value.

## CONCLUSIONS OF LAW

As part of the fresh start concept, the Bankruptcy Code allows debtors to exempt certain property from the bankruptcy estate. As many courts have recognized, the purpose of the exemptions is to provide a debtor with a fresh start, and as a result, exemptions are liberally construed in favor of the debtor. See In re Michael, 339 B.R. 798, 801 (Bankr. N.D. Ga. 2005). The initial burden is upon the objecting party, the Trustee in this case, to establish that the exemptions are not properly claimed. See Fed. R. Bankr. P. 4003(c). However, to the extent the amounts need to be traced to an exempt source, Debtor has the burden. See In re Rauser, 312 B.R. 461, 465 (Bankr. D. Ct. 2004)(stating the debtor must trace the exempt funds); In re Pettit, 224 B.R. 834, 840 (Bankr. M.D. Fla. 1998)("the party objecting to the exemption has the burden of proving, by a preponderance of the evidence, that the debtor is not entitled to the exemptions claimed. Once the objector has made a prima facie showing that debtor's claimed exemptions should be disallowed, the burden shifts to debtor to prove that the exemptions are legally valid.").

**Bank Accounts**.

7

Section 522 provides:

(b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.

(3) Property listed in this paragraph is--

(A) subject to subsections (o) and (p), **any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition** . . . .

11 U.S.C.§522(b)(emphasis added).  The Eleventh Circuit has noted that "[u]nder 11 U.S.C. §522(b), a debtor filing for bankruptcy may exempt certain assets from the property of the estate available for creditors.  He may either take the exemptions specified in the Code itself, 11 U.S.C. §522(d), unless state law prohibits this option, 'or, in the alternative,' he may take the exemptions provided by other federal statutes **and** state law." Walker v. Treadwell (In re Treadwell), 699 F.2d 1050, 1052 (11th Cir. 1983)(emphasis added) citing  H. Rep. No. 595, 95th Cong., 1st Sess. 126, 360, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6087, 6316.  Pursuant to 11 U.S.C. §522(b)(2), Georgia has "opted out" of the Bankruptcy Code exemptions.   Thus, debtors filing bankruptcy in Georgia may take the state law exemptions allowed in O.C.G.A. §44-13-100 **and** federal nonbankruptcy law.

8

AO 72A
(Rev. 8/82)

Section 42 U.S.C. §407 of the Social Security Act is a federal nonbankruptcy law and it provides:

> (a)  The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and **none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.**
>
> (b)  No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

42 U.S.C. §407.

Unlike the current debtor, the debtor in <u>Treadwell</u> had elected exemptions under 11 U.S.C. §522(d), and the Court held that 42 U.S.C. §407 which exempts Social Security benefits from creditors was inapplicable since the debtor was limited to those exemptions in §522(d).  However, because Georgia is an "opt out" state, Debtor in the case <u>sub judice</u> is only entitled to the exemptions set forth in O.C.G.A. §44-33-100 and other non-Title 11 federal statutes.  <u>See</u> <u>Combustion Fed. Credit Union v. Barron (In re Barron)</u>, 85 B.R. 603, 606 (Bankr. N.D. Ala. 1988)(because Alabama is an "opt-out state", a resident of Alabama is limited to exemptions under local laws, or Alabama law or "federal laws other than those exemptions under 11

9

U.S.C. §522(d).").

> Federal nonbankruptcy law exempts some benefits such as social security payments, and retirement benefits under the Railroad Retirement Act and the Civil Service Retirement program, and these exemptions apply to funds **debtor has received** or is entitled to receive from these sources. Such exemptions, however, are not available to a debtor who exempts property under the federal bankruptcy exemptions in Code §522(d).

Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel & Adam M. Goodman, Chapter 13 Practice and Procedure §5A:19 at 270 (2010-2011 ed.)(emphasis added).

> **Accumulated** or past due social security payments which are covered by 42 U.S.C.A. §407 are among the exemptions provided by non-bankruptcy federal law that the debtor can elect instead of the exemptions listed in the Bankruptcy Code. H. Rep. No. 595, 95th Cong., 1st Sess. 360, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6316. The House Report states:
>
> The debtor may choose the Federal exemptions prescribed in subsection (d), or he may choose the exemptions to which he is entitled under other Federal law and the law of the State of his domicile. If the debtor chooses the latter, some of the items that may be exempted under other Federal laws include:
>
> -Social security payments, 42 U.S.C. 407.
>
> If a debtor chooses the alternative of taking exemptions listed in the Bankruptcy Code, he may exempt, among other things, his 'right to receive a [future] social security benefit,' but not an accumulated benefit that has already been distributed. 11 U.S.C.A. §522(d)(10)(A).

10

> See H. Rep. No. 595, 95th Cong., 1st Sess. 362, reprinted in U.S. Code Cong. & Ad. News 5963, 6318 (Section 522(d)(10)(A) 'exempts certain benefits that are akin to future earnings of the debtor. These include social security ....').
>
> This analysis of section 522 illustrates that the exemption from the operation of the bankruptcy law provided by 42 U.S.C.A. § 407 is not absolute. If a debtor chooses the Bankruptcy Code exemptions, he gives up the protection of section 407, freeing accumulated social security benefits for the satisfaction of creditors.

In re Treadwell, 699 F.2d 1050, 1052 (11th Cir. 1983)(emphasis added).

In the current case, Debtor may not use the Bankruptcy Code exemptions, and therefore these accumulated funds are exempt pursuant to 42 U.S.C. §407. Most of the cases cited by the Trustee focus on "Debtor's right to receive" and "traceability" issues relevant to O.C.G.A. §44-14-100 and do not address the threshold issue of whether the exemption is allowed by non-bankruptcy federal law. See In re Schena, 439 B.R. 776, 780 (Bankr. D. N.M. 2010)(the debtor elected to use the federal bankruptcy exemptions, and is therefore precluded from invoking the federal non-bankruptcy exemptions); In re Cesare, 170 B.R. 37, 38-39 (Bankr. D. Conn. 1994)(The court noted the importance of the debtor's electing the federal exemptions -- "[I]n other federal non-bankruptcy statutes exempting certain government benefits from creditor process, Congress

11

has provided, using language substantially different than the language in § 522(d)(10), that the exemption runs to proceeds held by the beneficiary. See, e.g., 42 U.S.C. § 407(a)"); In re Kemp, 2011 WL 4434996 *1 (Bankr. D. D.C. 2011)(debtor's state exemption tracked the federal bankruptcy exemption "right to receive language"); In re Panza, 219 B.R. 95 (Bankr. W.D. Pa. 1998)(the federal bankruptcy exemptions do not extend to funds traceable to Debtor's right to receive disability); In re McCollum, 287 B.R. 750 (Bankr. E.D. Mo. 2002) (considered the exemptibility of retirement withdrawn prepetition and placed into a regular account which did not involve federal non-bankruptcy law exemptions).

The Trustee does not challenge Debtor's ability to exempt the social security payments, rather he argues such payments lose their exempt status when they are placed by a Debtor pre-petition in a regular bank account.  Given the language of 42 U.S.C. §407, I disagree.  See Philpott v. Essex County Welfare Bd., 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed.2d 608 (1973)(moneys paid within the definition of 42 U.S.C. §407 are exempt); In re Lazin, 217 B.R. 332 (Bankr. M.D. Fla. 1998)("[T]here is nothing in Treadwell to mean that once the funds have been received by the Social Security recipient and deposited into the bank that the funds lose their immunity from creditor claims.  On the contrary, it expressly recognized that one could claim an exemption under 42 U.S.C. §407 as long as one did not

12

also claim the exemption under §522(d)."); In re Moore, 214 B.R. 628, 630 (Bankr. D. Kan. 1997)(The "moneys paid" language of §407 "shows that the exemption applies to social security benefits that have already been paid out. Furthermore, the Court finds that the funds do not lose their exempt status when deposited into a bank account."); In re Carpenter, 614 F.3d. 930 (8th Cir. 2010)(using analysis similar to the Eleventh Circuit's analysis in In re Meehan, 102 F.3d 1209 (11th Cir. 1997) to conclude that a lump sum pre-petition payment under 42 U.S.C. §407 is not even included in the bankruptcy estate created by 11 U.S.C. §541); In re Anderson, 410 B.R. 289, 291-92 (Bankr. W.D. Mo. 2009)("[G]enerally speaking, once money from an exempt fund is paid out and placed in a bank account, such money typically loses its exempt status. However, Congress has enacted statues to protect certain limited types of funds, even after they have been paid out. For example, [many courts have held that moneys paid out pre-petition pursuant to] 42 U.S.C. §407 . . . do not lose their exempt status after they are paid to the debtor."); S & S Diversified Services, L.L.C. v. Taylor, 897 F.Supp. 549, 552 (D. Wyo. 1995), (a debtor's Social Security benefits already paid were exempt from garnishment even if the benefits were deposited into a joint account the debtor maintained with her daughter and the benefits were commingled); Barron v. Combustion Fed. Credit Union (In re Barron), 85 B.R. 603, 607 (Bankr. N.D. Ala. 1988)("[A] debtor,

13

pursuant to 42 U.S.C. §407(b), is not required to claim as an exemption from property of the estate social security-disability benefits received before the filing of the bankruptcy petition if said debtor is claiming exemptions from the property of the estate provided by 11 U.S.C. §522(b)(1).")

For these reasons, contrary to the Trustee's argument, I find these funds paid to Debtor pre-petition pursuant to 42 U.S.C. §407 did not per se lose their exempt status when placed into Debtor's Bank Account.   Notwithstanding the foregoing, and as discussed hereafter, because I find Debtor may not exempt the sums deposited into the Bank Accounts received pre-petition from his teacher's retirement, tracing the allocation of the funds is an issue.  As previously addressed, Debtor has burden of tracing the Bank Account funds attributed exempt sources.   Debtor is given 14 days from the date of this Order to submit his analysis in this regard, and his arguments regarding the applicability and application of Citronelle-Mobile Gathering, Inc. v. Watkins, 934 F.2d 1180, 1192 (11th Cir. 1991).[4]

---

[4] In 1991, the Eleventh Circuit in interpreting 42 U.S.C. §407 held that "section 407 attempts to insure that recipients have the resources necessary to meet their **most basic needs** . . . . However, when the debtor's ability to care for himself or herself is not implicated, Section 407 need not be applied." Citronelle-Mobile Gathering, Inc. v. Watkins, 934 F.2d 1180, 1192 (11th Cir. 1991)(emphasis added).   Thus, the Eleventh Circuit arguably has implied an exception to the exemption afforded by 42 U.S.C. §407

14

**Veteran Retirement and Disability**.

Similar to the arguments cited above, Debtor also claims the sums attributable to his VA retirement and disability as exempt pursuant to 38 U.S.C. §5301, which provides in pertinent part:

> (a)(1) Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption contained therein as to taxation extend to any property purchased in part or wholly out of such payments. The provisions of this section shall not be construed to prohibit the assignment of insurance otherwise authorized under chapter 19 of this title, or of servicemen's indemnity.

38 U.S.C. §5301. Debtor argues he is entitled to exempt his pre-petition retirement and disability payments from the Veterans Administration pursuant to 38 U.S.C. §5301(a). See Porter v. Aetna Cas. & Sur. Co., 370 U.S. 159 (1962) (discussing exemption of benefits under 38 U.S.C. § 3101(a), later re-codified as 38 U.S.C. §5301(a) and holding that the funds deposited into a federal savings

-----

when the reaching of Social Security benefits is not going to impair the ability of the recipient to satisfy his basic needs.

15

and loan association were not "permanent investments" and therefore retained their exempt status); In re Hyder-Ward, 2010 WL 2572948 (Bankr. D. Me. June 23, 2010)("to the extent that the funds the debtor claims as exempt are traceable to sources from which the debtor would be entitled to exempt payments pursuant to 38 U.S.C. §5301(a)(1), those funds themselves are also exempt"); In re Cook, 406 B.R. 770, 773–74 (Bankr. S. D. Ohio 2009); In re Smith, 242 B.R. 427, 434 (Bankr. E.D. Tenn. 1999).  As with the §407 arguments, the Trustee does not challenge Debtor's assertions, but argues that once the funds were deposited into the Bank Accounts pre-petition they became non-exempt because they were commingled with non-exempt funds. Given that I have found that the Debtor has the burden of proof to trace the specific funds to the exempt sources, Debtor is given 14 days from the date of this Order to submit his analysis in this regard.

**State Law Bankruptcy Exemptions**.

Debtor also attempts to exempt the Bank Accounts pursuant to O.C.G.A. §44-13-100(a)(2)(E) which provides:

> (a) [A]ny debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:
>
> (2) The debtor's **right to receive**:
>
> (A) A social security benefit, unemployment compensation, or a local public assistance benefit;

16

    (B)   A veteran's benefit;

    (C) A disability, illness, or unemployment benefit;

    (D) A payment, not to exceed $10,000.00, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

    (E) A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

O.C.G.A. §44-13-100(a)(2)(emphasis added). Debtor has not asserted any non-bankruptcy federal exemption provisions as to his teacher's retirement in the Bank Accounts. Therefore, the Court must consider the Georgia exemption law, O.C.G.A. 44-13-100 for these claims. Furthermore, Debtor makes alternative arguments under state law as to his social security benefits and veterans benefits. The language of O.C.G.A. §44-13-100 as a whole leads me to conclude the funds in the Bank Accounts are not exempt. O.C.G.A. §44-11-100(a)(2)(A)-(E) allows debtors to exempt their "right to receive" certain benefits. There is no mention of funds "traceable" to such sources. This is contrasted with the language of O.C.G.A. §44-13-100(a)(11) which expressly allows debtors to exempt their "right to receive, or

17

property that is traceable to" certain sources.[5]  This difference in language leads me to conclude that the Georgia Legislature intentionally opted not to exempt the funds in these accounts at the

---

[5]  Georgia's §44-13-100(a)(11) provides:

> (a)  In lieu of the exemption provided in Code Section 44-13-1, any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:
>
> .
>
> .
>
> .
>
> (11) The debtor's right to receive, or property that is traceable to:
> > (A) An award under a crime victim's reparation law;
> > (B) A payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;
> > (C) A payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;
> > (D) A payment, not to exceed $ 10,000.00, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or
> > (E) A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

18

time the bankruptcy petition is filed, but rather limited this exemption to the Debtor's post-petition "right to receive" these funds.

Similarly, O.C.G.A. §44-13-100(a)(2.1) allows debtors to exempt their "aggregate interest in any funds or property held on behalf of the debtor and not yet distributed to the debtor." O.C.G.A. §44-13-100(a)(2.1). Given the specific language of the state statute as a whole, I find these sums in the Bank Accounts are not exemptible by Debtor.

This conclusion aligns with one of the Bankruptcy Code's tenets to provide debtors with a fresh start, but not a head start. In re Taylor, 3 F.3d 1512, 1516 (11th Cir. 1993). Section 541 of the Bankruptcy Code excludes from property of the bankruptcy estate "earnings from serviced performed by an individual debtor after the commencement of the case." 11 U.S.C. §541(a)(6).

> However, the Section 541(a)(6) exclusion of post-petition earnings does not address a separate body of debtors who are equally entitled to a "fresh start"-debtors who sustain themselves from sources other than earnings. Included among such non-wage earning debtors are persons receiving social security, unemployment, and public assistance benefits. These benefits are not future wages but instead are quasi-assets. For example, a retired debtor receiving social security benefits at the time of her bankruptcy petition does not continue to 'earn' those benefits post-petition. Her age has already established her eligibility. Similarly, a divorced spouse

19

> who is receiving alimony does not 'earn' the
> post-petition support payments. Indeed,
> post-petition alimony payments arising under a
> pre-petition divorce judgment are more akin to
> payments on account of a pre-petition account
> receivable than to future earnings.
>
> I believe that Congress intended Section
> 522(d)(10)[6] to ensure that deserving debtors
> who are receiving non-wage benefits at the time
> they file for bankruptcy would receive the same
> treatment as debtors who are employed. What
> Congress recognized was that there would be
> debtors filing for bankruptcy who
> depended upon non-wage payment streams for
> their livelihood and that many of these debtors
> needed these benefits as much, if not more,
> than debtors who could continue to work. It is
> in this sense that the 'benefits' enumerated in
> Section 522(d)(10) are 'akin to future earnings
> of the debtor.'

In re Dale, 252 B.R. 430, 435-436 (Bankr. W.D. Mich. 2000), aff'd,

264 B.R. 875 (W.D. Mich. 2001), rev'd on other grounds, 43 F. App'x.

911 (6th Cir. 2002); In re Cesare, 170 B.R. 37, 39 (Bankr. D. Conn.

1994)(the plain language of §522(d)(10) and the contrasting language

of 11 U.S.C. §522(d)(11)(permitting exemption of "property that is

traceable to" certain assets), dictates that only a debtor's right

to receive a benefit to which §522(d)(10) applies, and not benefits

already received prepetition, can be claimed exempt under

---

        6    Because the language of O.C.G.A. §44-13-100(a)(2) and
(a)(11) are analogous 11 U.S.C.A. §522(d)(10) and (d)(11), cases
interpreting the federal provisions are often helpful in analyzing
the scope of these state law exemptions before the Court. See
generally, In re Kemp, 2011 WL 4434996 *1 (Bankr. D. Dist. Col.
Sept. 22, 2011).

AO 72A
(Rev. 8/82)

§522(d)(10)); accord, In re Gonsalves, 2010 WL 5342084 at *7 (Bankr. D. Mass. Dec. 21, 2010); In re Schena, 439 B.R. 776, 781–82 (Bankr. D. N.M. 2010); In re McCollum, 287 B.R. 750, 753 (Bankr. E.D. Mo. 2002); In re Michael, 262 B.R. 296, 298 (Bankr. M.D. Pa. 2001); In re Panza, 219 B.R. 95, 97 (Bankr. W.D. Pa. 1998); In re Moore, 214 B.R. 628, 631 (Bankr. D. Kan. 1997); In re Williams, 181 B.R. 298, 301 (Bankr. W.D. Mich. 1995). Exempting of the right to receive payments acts as a substitute for future wages, and permits the Debtor the opportunity to a fresh start. In re Kemp, 2011 WL 4434996 *1 (Bankr. D.D.C. Sept. 22, 2011).

Furthermore, allowing debtors to use O.C.G.A. §44-13-100(a)(2) to exempt sums "traceable" to an exempt source would subsume other exemptions allowed in O.C.G.A. §44-13-100. For example, if Debtor used these sums prepetition to purchase a car, the $3,500.00 exemption allowed by O.C.G.A. §44-13-100(a)(3) would be unnecessary. See In re Carelock, 2006 WL 3708688*2 (Bankr. S.D. Ga. Jan. 13, 2006)(Debtor cannot use Georgia motor vehicle exemption statute (O.C.G.A. §44-13-100(a)(3)) to exempt cash proceeds received prepetition for the prepetition loss of a vehicle); In re Panza, 219 B.R. 95, 98 (W.D. Pa. 1988) (if household goods "traceable" to a "right to receive" benefit payments were exemptible, that could result in the debtor's exempting a fourth fur coat as household goods in excess of the aggregate amount of household goods exemptible under

21

11 U.S.C. §522(d)(3)).  For these reasons, I find the sums in these Bank Accounts are not exemptible by Debtor pursuant to O.C.G.A. §44-13-100.

**IRA and Hartford Annuity**.

Debtor's schedules claim the IRA and Hartford Annuity exempt pursuant to O.C.G.A. §18-4-22.  Alternatively, Debtor argues they are exempt pursuant to O.C.G.A. §§44-13-100(a)(2.1)(D) and 44-13-100(a)(2)(E), respectively.

Georgia Code sections exempts from garnishment "funds or benefits from a pension or retirement program as defined in 29 U.S.C. §1002(2)(A) or funds or other benefits from an individual retirement account" but only "until paid or otherwise transferred to a member of such program."  O.C.G.A. §18-4-22(a).  The Trustee contends a debtor who files bankruptcy while domiciled in Georgia is limited to the list of state law exemptions found in O.C.G.A. §44-13-100(a) and therefore Debtor is not entitled to exempt the IRA or the Hartford Annuity pursuant to O.C.G.A. §18-4-22.

**IRA.**

The Eleventh Circuit has ruled that a Georgia debtor's traditional IRA is excluded from property of the bankruptcy estate under §541(c)(2) because it is exempt from garnishment under O.C.G.A. §18-4-22(a).  <u>Meehan v. Wallace (In re Meehan)</u>, 102 F.3d 1209 (11th Cir. 1997).  There have been no allegations that the IRA is not a

22

traditional individual retirement account within the meaning of 26 U.S.C. §408. Therefore, I find the Trustee has failed to carry his burden to establish this exemption is not properly claimed.

Furthermore, I find the IRA also is exempt under Debtor's alternative argument pursuant to O.C.G.A. §44-14-100(a)(2.1)(D). Georgia Code Section 44-13-100(a)(2.1)(D) provides that the Debtor may exempt:

> (2.1) The debtor's aggregate interest in any funds or property held on behalf of the debtor, and not yet distributed to the debtor, under any retirement or pension plan or system:
> .
> .
> .
> .
> (D) An individual retirement account within the meaning of Title 26 U.S.C. Section 408.

Debtor correctly points out that O.C.G.A. §44-13-100(a)(2.1)(D) contains no requirement that the funds be reasonably necessary for the support of Debtor or his dependents. There have been no allegations that any of these funds have been distributed to the Debtor and therefore, I find Debtor may exempt this IRA. See In re Bramlette, 333 B.R. 911, 919 (Bankr. N.D. Ga. 2005).

**Hartford Annuity.**

Debtor attempts to exempt the Hartford Annuity pursuant to §§18-4-22 and §44-13-100(a)(2))E). The Trustee contends a debtor who files bankruptcy while domiciled in Georgia is limited to the list of state law exemptions found in O.C.G.A. §44-13-100(a) and therefore

23

Debtor is not entitled to exempt the Hartford Annuity pursuant to O.C.G.A. §18-4-22. The Trustee also claims the Annuity is not exempt under the provisions of O.C.G.A. §44-13-100(a)(2)(E).

For the reasons discussed in the life insurance section of this opinion, I agree that a debtor who files bankruptcy while domiciled in Georgia is limited to the list of state law exemptions found in O.C.G.A. §44-13-100(a) and therefore deny Debtor's attempt to exempt the Annuity pursuant to O.C.G.A. §18-4-22. See In re Joyner, 2012 WL 3610118 at *2. Debtor also appears to have abandoned this argument as he has limited his arguments in this regard to the provisions of O.C.G.A. §44-13-100(a)(2)(E). For these reasons, I find Debtor cannot exempt the Hartford Annuity pursuant to O.C.G.A. §18-4-22.

In the alternative, Debtor claims to exempt the Hartford Annuity pursuant to O.C.G.A. §44-13-100(a)(2)(E). The Trustee argues the annuity is not the type of annuity protected from exemption by O.C.G.A. §44-13-100(a)(2)(E), and it is not reasonably necessary for the support of Debtor or his dependents.[7]

To be exempt under that provision the annuity must meet three requirements. First, it must be an "annuity" as that term is used in the O.C.G.A. §44-13-100(a)(2)(E). Silliman v. Cassell (In re

---

[7] The Trustee adopted by reference the arguments set forth by Ms. Hagen. Dckt. Nos. 111 and 105.

AO 72A
(Rev. 8/82)

Cassell), 688 F.3d 1291, 1294 (11th Cir. 2012). Second, the annuity payments to [Debtor] must be "on account of illness, disability, death, age, or length of service"." Id. at 1295. Third, the payments must be "reasonably necessary to the support of the debtor and any dependent of the debtor. Id.; O.C.G.A. §44-13-100(a)(2)(E).

After review of the Eleventh Circuit's In re Cassell opinion, the parties held a status conference to discuss whether the decision of this issue should be stayed pending of the resolution of the annuity-related questions the Eleventh Circuit certified to the Georgia Supreme Court in In re Cassell. See In re Cassell, 688 F.3d at 1301. Given the importance of the proper definition of the word "annuity" and the debtor's right to receive a payment from and annuity "on the account of illness, disability, death, age, or length of service", the matter is stayed pending the Georgia Supreme Court's response to the certified questions; provided however:

1.    Debtor shall not alter the investment strategy or change any material terms of the annuity without prior Court Order;

2.    Debtor shall provide the Trustee, or cause the Trustee to be provided, with monthly account statements; and

3.    The parties shall promptly notify the Court upon receipt of notification that the Georgia Supreme Court has responded to the certified questions.

**Whole Life Insurance**.

25

There are three main issues to address in regards to the life insurance policy.  First, whether it would be unconstitutional to deny Debtor the right to exempt all, or any portion of, the $13,445.00 cash surrender value of the policy pursuant to O.C.G.A. §33-25-11.  Second, whether Debtor is limited to the exemption provided by O.C.G.A. §44-13-100(a)(9),[8] or can the cash value be exempted under O.C.G.A. §33-25-11.  Finally, in light of Debtor's purported failure to timely disclose the existence of this policy, whether he is entitled to any portion of the policy, namely the $2,000.00 exemption allowed pursuant to O.C.G.A. §44-13-100(a)(9).

**Constitionality**.

The Trustee objects to the Debtor's claim of exemption for the full value of a policy of whole life insurance pursuant to O.C.G.A. §33-25-11(c), arguing Debtor is limited to the state law exemptions set forth in O.C.G.A. §44-13-100 for purposes of bankruptcy.[9]  In response to the Trustee's objection, Debtor argues

---

[8]    Debtor's Schedule C cites O.C.G.A. §44-13-100(a)(8) as the exemption rather than O.C.G.A. §44-13-100(a)(9).  The Trustee argues that (a)(8) only allows the Debtor to exempt his unmatured life insurance policies themselves, not the cash value of the policies.  See In re Waggoner, 244 B.R. 492 (Bankr. M.D. Ga. 2000).  Debtor does not challenge this conclusion and focuses this portion of his argument on (a)(9).  In order to fully address the matters before me, I agree with the Trustee's conclusion regarding the scope of (a)(8) and find the cash value of the policy is not exemptible pursuant to O.C.G.A. §44-13-100(a)(8).

[9]    O.C.G.A. §33-25-11(c) states in pertinent part:

✎AO 72A
(Rev. 8/82)

that limiting the Debtor to the $2,000.00 exemption for the cash surrender value of life insurance provided in O.C.G.A. §44-13-100(a) is unconstitutional.[10]   According to the Debtor, O.C.G.A. §33-25-11(c) protects an unlimited amount of cash surrender value of life insurance from the bankruptcy estate and not allowing the Debtor to take this exemption violates the Equal Protection Clause and the

----

> (c) The cash surrender values of life insurance policies issued upon the lives of citizens or residents of this state, upon whatever form, shall not in any case be liable to attachment, garnishment, or legal process in favor of any creditor of the person whose life is so insured unless the insurance policy was assigned to or was effected for the benefit of such creditor or unless the purchase, sale, or transfer of the policy is made with the intent to defraud creditors.

[10]   O.C.G.A. §44-13-100(a)(8) and (9) states in pertinent part:

> (a) In lieu of the exemption provided in Code Section 44-13-1, any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:
>
> (8) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract;
>
> (9) The debtor's aggregate interest, not to exceed $ 2,000.00 in value. . . in any accrued dividend or interest under, or loan or cash value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent

AO 72A
(Rev. 8/82)

Supremacy Clause of the United States and Georgia Constitutions.[11] I disagree.[12]

In order for a statute to pass constitutional muster under an equal protection argument under the U.S. Constitution the challenged statutory classification must be rationally related to a legitimate government interest. Harris v. McRae, 448 U.S. 297 (1980); In re Joyner, 2012 WL 3610118 at *4. The classifications must be reasonable, not arbitrary, and they must bear a fair and substantial relationship to the object of the legislation, so that all persons similarly situated will be treated alike. Eisenstadt v. Baird, 405 U.S. 438, 447 (1972). "Under the 'rational relationship' test, a court reviewing the constitutionality of a classification only may strike down the classification if the classification is without any reasonable justification." Wood v. U.S. (In re Wood), 866 F.2d 1367,

---

[11] Pursuant to 28 U.S.C. §2403 and Federal Rule of Bankruptcy Procedure 9005.1, this matter was certified to the Georgia State Attorney General giving sufficient time for the Attorney General to intervene. Dckt. No. 173. The Attorney General has not made an appearance and has not intervened in this matter.

[12] Because I find the Georgia exemption statute (O.C.G.A. §44-13-100) constitutional, I retain jurisdiction and resolve this proceeding as a core proceeding. See In re Headrick, 203 B.R. 805, 808 n. 5 (Bankr. S.D. Ga. 1996)(J. Dalis)(bankruptcy court must do a report and recommendation to district court if a valid constitutional challenge exists but retains if the constitutional challenge is not valid); In re Harris, 1998 WL 34064509 *1 (Bankr. S.D. Ga. September 30, 1998)(J. Davis)(reporting and recommending to the district court that 11 U.S.C. §106 is unconstitutional).

28

1370 (11th Cir. 1989). Likewise, under the Georgia Constitution, a statutory classification will withstand an equal protection challenge if it is "reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." See Mack Trucks, Inc. v. Conkle, 436 S.E.2d 635, 638 (Ga. 1993). "The Equal Protection Clause allows the States considerable leeway to enact legislation that may appear to affect similarly situated people differently, and Legislatures are ordinarily assumed to have acted constitutionally." Melton v. Gunter, 773 F.2d 1548, 1551 (11th Cir. 1985), citing Clements v. Fashing, 457 U.S. 957, 963 (1982).

In this case, the classification at issue is the classification of debtors as either bankruptcy debtors or non-bankruptcy debtors for purposes of determining the amount of the cash surrender value of whole life insurance which may be exempted. As allowed by 11 U.S.C. §522, the Georgia has "opted out" of the federal bankruptcy exemption provisions. See O.C.G.A. §44-13-100; In re Williams, 197 B.R. 398, 402 (Bankr. M.D. Ga. 1996); In re Ambrose, 179 B.R. 982, 984, n. 2 (Bankr. S.D. Ga. 1995). Therefore, Georgia residents filing for bankruptcy relief are granted only those exemptions provided by Georgia law and federal non-bankruptcy law. In re Vaughn, 2008 WL 7880893 (Bankr. N.D. Ga. 2008); In re

29

✎AO 72A
(Rev. 8/82)

_Ambrose_, 179 B.R. at 984, n. 2.   Pursuant to O.C.G.A. §44-13-100, the Georgia legislators provided exemptions "for purposes of bankruptcy," thereby creating a classification of debtors in bankruptcy distinct from all other debtors.

After considering the matter, I find Georgia's exemption statute, which applies only to debtors in bankruptcy and intestate insolvent estates, passes constitutional muster under the equal protection clauses of both the U.S. and Georgia constitutions.   The rational basis for providing separate exemptions "for purposes of bankruptcy" is to serve the overriding purposes of the bankruptcy laws.   Specifically, "[t]he main purposes of bankruptcy law are to collect all of the assets and liabilities of an entity, to pay the creditors of the bankrupt to the fullest extent possible, and to give the Debtor a fresh start." _Menchise v. Akerman Senterfitt_, 532 F.3d 1146, 1151 (11th Cir. 2008).   The overriding purpose of bankruptcy liquidation is the expeditious reduction of the Debtor's property to money, for equitable distribution to the creditors. _Midlantic Nat'l Bank v. New Jersey_, 474 U.S. 494, 508 (1986).

The statutory scheme for exemption of the cash surrender value of life insurance policy created by O.C.G.A. §44-13-100 serves the purposes of the bankruptcy laws.   The Georgia legislature struck a balance between the need of giving a debtor a fresh start and the privilege of obtaining a bankruptcy discharge, while providing

AO 72A
(Rev. 8/82)

creditors with a distribution.  Under the Georgia exemptions, the debtor is given a fresh start by being allowed to exempt any unmatured life insurance contract, O.C.G.A. §44-13-100(8), plus his aggregate interest, not to exceed $2,000.00, in any cash value of the unmatured life insurance contract.   O.C.G.A. §44-13-100(9). At the same time, the statute serves the purpose of providing creditors a distribution by allowing any additional cash surrender value of the life insurance policy to be included in the bankruptcy estate for distribution.  Georgia's bankruptcy exemptions for life insurance contracts are similar but not identical to the federal bankruptcy exemptions.  See 11 U.S.C. §522(d)(7) and (8).[13]

---

[13]   11 U.S.C. §522(d)(7) and (8) state in pertinent part:

(d)  The following property may be exempted under subsection (b)(2) of this section:

(7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

(8) The debtor's aggregate interest, not to exceed in value $11,525 less any amount of property of the estate transferred in the manner specified in section 542(d) of this title, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

31

Furthermore, O.C.G.A. §44-13-100 applies equally to all similarly situated debtors. For a state statute to withstand an equal protection challenge, the statute need not treat bankruptcy debtors and non-bankruptcy debtors the same. Rather, the statute must treat all bankruptcy petitioners alike. See, e.g., Sticka v. Applebaum (In re Applebaum), 422 B.R. 684, 692-693 (9th Cir. 2009) (holding that California's bankruptcy-only exemption statute did not violate the Equal Protection Clause even though the exemptions differed from exemptions that California accorded to debtors not in bankruptcy); In re Shumaker, 124 B.R. 820 (D. Mont. 1991)(Montana exemption statute, applying only in bankruptcy, treats all bankruptcy petitioners alike). For these reasons, I find that applying O.C.G.A. §44-13-100 to debtors in bankruptcy while applying O.C.G.A. §33-25-11(c) to non-bankruptcy debtors does not offend equal protection provisions. In re Joyner, 2012 WL 3610118 at *2-4.

Second, Debtor argues the Georgia legislature invaded an area of law that is reserved for the federal government when it enacted a bankruptcy specific exemption statute. Debtor's argument has found some support in the case law. See e.g., In re Regevig, 389 B.R. 736, 741 (Bankr. D. Ariz. 2008) ("[T]here is simply no room for states to adopt their own bankruptcy-specific exemptions by a procedure other than that provided by the Code, i.e., not opting out of the Bankruptcy Code's exemptions."); In re Wallace, 347 B.R. 626,

32

635 (Bankr. W.D. Mich. 2006) ("[W]hat Congress cannot do under the Constitution is to delegate to . . . the states . . . the power to actually decide what is to be the appropriate [bankruptcy only exemption] scheme."); In re Cross, 255 B.R. 25, 35 (Bankr. N.D. Ind. 2000)("[S]tates may not create exemptions that apply only to bankruptcy proceedings. Doing so frustrates the full operation of federal law by challenging the balance Congress struck which allocates the consequences of bankruptcy between debtors and creditors."); In re Reynolds, 24 B.R. 344, 347 (Bankr. S.D. Ohio 1982)("when a state endeavors to adopt exemptions applicable only in bankruptcy court, it then invades and area of law reserved to the federal government, as preempted by the U.S. Constitution."). Conversely, several cases have held bankruptcy only exemptions constitutional. In re Joyner, 2012 WL 3610118 (Bankr. S.D. Ga. Aug. 7, 2012)(J. Davis)(upholding the constitutionality of Georgia's bankruptcy statute); Kulp v. Zeman (In re Kulp), 949 F.2d 1106, 1109 n. 3 (10th Cir. 1991) ("[S]tates may pass laws which do not conflict with the federal scheme. In this case we have no conflict [with Colorado's bankruptcy only exemption] because 11 U.S.C. §522 expressly delegates to states the power to create bankruptcy exemptions."); In re Morrell, 394 B.R. 405 (Bankr. N.D. W. Va. 2008)(West Virginia "admirably fulfilled its federal mandate in opting out of the federal exemptions" and creating its bankruptcy

33

specific exemption statute); <u>In re Brown</u>, 2007 WL 2120380, *15 (Bankr. N.D.N.Y. July 23, 2007) (holding that Congress specifically allowed States to use their own exemptions instead of the federal exemptions listed in §522(d), and New York's bankruptcy only exemption scheme is not so inconsistent with the exemptions listed in §522(d) as to render it invalid under the Supremacy Clause); <u>In re Shumaker</u>, 124 B.R. 820, 826 (Bankr. D. Mont. 1991) ("[T]he underlying premise . . . that it is not permissible for states to seek to enact two different levels of exemptions, one applicable in bankruptcy and one without, simply misstates the applicable constitutional power of a state to enact bankruptcy laws where Congress has not sought to act."); <u>In re Vasko</u>, 6 B.R. 317, 323–24 (Bankr. N.D. Ohio 1980) (concluding that the State's bankruptcy only exemption law did not conflict with, or frustrate the basic objectives of Congress to provide a debtor with a fresh start and was therefore not preempted).  After considering the matter, I find the analysis of the cases holding that state bankruptcy specific exemption statutes to be constitutional are more persuasive.

Debtor's argument also requires inquiry into whether the Supremacy Clause would be violated.  Deciding whether a state statute violates the Supremacy Clause requires the Court to look at the construction of the state and the federal statutes and then determine whether the statutes conflict.  <u>In re Applebaum</u>, 422 B.R.

34

at 689. The Bankruptcy Clause of the U.S. Constitution vests Congress with the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States[.]" U.S. Const. Art. I, §8, cl. 4. The uniformity required by the Bankruptcy Clause is geographical, not personal. Hanover Nat'l Bank v. Moyses, 186 U.S. 181, 188 (1902); In re Joyner, 2012 WL 3610118 at *2-3; In re Kulp, 949 F.2d at 1109, n. 3; In re Sullivan, 680 F.2d 1131 (7th Cir.), cert. denied, 459 U.S. 992 (1982). The Clause neither recognizes nor grants individual rights, and it is "not a straightjacket that forbids Congress to distinguish among classes of debtors." Ry. Labor Execs.' Ass'n. v. Gibbons, 455 U.S. 457, 469 (1982); In re Wood, 866 F.2d at 1372. "Instead, it only requires that bankruptcy laws apply uniformly among classes of debtors." In re Wood, 866 F.2d at 1372.

In exercising that power, Congress enacted 11 U.S.C. §522. In §522, Congress expressly gave the States authority to implement their own exemption scheme by allowing them to opt-out of the federal exemptions. In re Beckwith, 448 B.R. 757, 765 (Bankr. S.D. Ohio 2011). Section 522 grants the states broad power to craft state exemption laws applicable to bankruptcy proceedings. Hovis v. Wright, 751 F.2d 714, 716 (4th Cir. 1985). State laws are suspended only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress. Butner v. United

35

States, 440 U.S. 48, 55 n.9 (1979).

In 1980, Georgia elected to opt out of the federal exemptions list and created its own bankruptcy state law exemption statute, Code Ann. §51-1301.1, which is now codified at O.C.G.A. §44-13-100. In re Ryan, 2012 WL 423854 *1 (Bankr. S.D. Ga. Jan. 19, 2012). Georgia's creation of a bankruptcy exemption statute does not conflict with 11 U.S.C. §522 as Congress expressly delegated that power to the States.

Furthermore, the uniformity requirement of the Constitution pertains only to Congress; it is an affirmative limitation or restriction upon Congress's power, not a limitation on the states exercise of their own power. Ry. Labor Execs.' Ass'n. v. Gibbons, 455 U.S. at 468; In re Brown, 2007 WL 2120380 (Bankr. N.D.N.Y. July 23, 2007). Courts in a number of jurisdictions have held that Congress has not restricted the authority delegated to the states by requiring that state exemptions apply equally to bankruptcy and non-bankruptcy cases. For example, in In re Applebaum, the Ninth Circuit Court of Appeals held that even though California residents in bankruptcy proceedings are allowed different exemptions from those not in bankruptcy, the bankruptcy-only statute is a permissible grant of the state's power to enact bankruptcy laws. In re Applebaum, 422 B.R. 684, 692-93 (9th Cir. 2009). The court in Applebaum reasoned that the concept of uniformity requires that

36

federal bankruptcy laws apply equally in form (but not necessarily in effect) to all creditors and debtors, or to "defined classes" of debtors and creditors. In re Applebaum, 422 B.R. at 692, citing Ry. Labor Execs.' Ass'n v. Gibbons, 455 U.S. 457, 473 (1982) and Blanchette v. Conn Gen. Ins. Com., 419 U.S. 102, 159 (1974). Because the opt-out provision in the federal law and corresponding California bankruptcy-only exemption statute apply uniformly to all debtors and all creditors in bankruptcy, it passes muster under the Uniformity Clause. In re Applebaum, 422 B.R. at 693. The Ninth Circuit reasoned that the state exemption laws may permissibly produce varying effects on citizens of the same state, so long as the laws do not conflict with federal law. In re Applebaum, 422 B.R. at 692; In re Shumaker, 124 B.R. 820, 826 (Bankr. D. Mont. 1991).

Similarly, courts in numerous other jurisdictions have held that state laws which treat bankruptcy debtors differently than non-bankruptcy debtors do not violate the uniformity requirements of the Bankruptcy Clause of the Constitution. See e.g., Sheehan v. Peveich, 574 F.3d 248 (4th Cir. 2009) (West Virginia's bankruptcy-only exemptions do not violate the Supremacy Clause); Kulp, 949 F.2d at 1109; In re Holt, 84 B.R. 991(Bankr. W.D. Ark. 1988), aff'd 91 B.R. 997 (W.D. Ark. 1988), aff'd 894 F.2d 1005 (8th Cir. 1990); In re Brown, 2007 WL 2120380 (Bankr. N.D.N.Y. 2007); In re Shumaker,

37

124 B.R. 820 (Bankr. D. Mont. 1991); In re Vasko, 6 B.R. 317 (Bankr. N.D. Ohio 1980); In re Bloom, 5 B.R. 451 (Bankr. N.D. Ohio 1980). These courts reason that by allowing states to "opt-out" Congress granted the states the right to enact state exemptions and the U.S. Supreme Court has held that such delegation is constitutional. See Sturges v. Crowninshield, 17 U.S. 122, 195-96 (1819)(stating where Congress chooses not to exercise the power to legislate in a certain area, the fact that a state may legislate in that area does not create a conflict, because it is "the exercise of that power that is incompatible with the exercise of that same power by the states"); Moyses, 186 U.S. at 190(delegation of exemption provisions in 1898 Act constitutional); Sullivan, 680 F.2d at 1137 (rejecting argument that §522(b)(1) is an impermissible delegation of Congressional power). I agree. The states are exercising their own power, thus there can be no unconstitutional delegation of Congressional power. See e.g., Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 439-40 (1946)(stating Congress and the states are not forbidden to cooperate to achieve common legislative ends particularly in the areas of commerce and taxation). The Georgia exemption statute applies uniformly to all debtors in bankruptcy, and therefore, I find it is sufficient to pass muster under the Uniformity Clause. In re Wood, 866 F.2d at 1372 (Bankruptcy Clause "only requires that bankruptcy laws apply uniformly among classes

38

of debtors.").

For the foregoing reasons, I find limiting Debtor's claim of state law exemptions to those set forth in O.C.G.A. §44-13-100 is constitutional and sustain the Trustee's objection.

**Availability of O.C.G.A. §33-25-11**.

I have previously held that Georgia debtors in bankruptcy cannot exempt cash surrender values of whole life policies under the provisions of O.C.G.A. §33-25-11.  In re Sapp, Case. No. 11-30468 (Bankr. S.D. Ga. Jun. 15, 2012) (Barrett, J.).  After reviewing the matter, I continue to agree with that conclusion, and incorporate its rationale and analysis herein.  See also, In re Ryan, 2012 WL 423854 (Bankr. S.D. Ga. Jan. 19, 2012)(J. Davis); In re Allen, 2010 WL 3958171 (Bankr. M.D. Ga. Oct. 4, 2010)(J. Smith); In re Dean, 470 B.R. 643 (Bankr. M.D. Ga.2012) (J. Walker).

**O.C.G.A. §44-13-100(a)(9)**.

Finally, turning to the issue of whether Debtor's failure to disclose the insurance policy and his delay in amending his schedules should prevent him from claiming any exemption in the policy, I find Debtor is entitled to exempt $2,000.00 of the policy's value.  In light of the fresh start concept in bankruptcy, a debtor's right to exemptions is significant, but it is not an absolute right.  Doan v. Hudgins (In re Doan), 672 F.2d 831, 833 (11th Cir. 1982a); In re Vaughn, 2011 WL 7880893 *2 (Bankr. N.D. Ga.

AO 72A
(Rev. 8/82)

Nov. 22, 2008).  Pursuant to 11 U.S.C. §105(a)[14], bankruptcy courts do have the power to deny a claim of exemption where a debtor intentionally or fraudulently attempts to conceal an asset.  Id.  After considering the testimony, I do not think Debtor's conduct rises to the level of denying his ability to exempt $2,000.00 of the value of the policy.

The Trustee complains the Debtor failed to disclose this policy on at least three different occasions.  First, when he initially prepared his bankruptcy schedules.  Next, at his §341 meeting of creditors in March, where Debtor testified under oath that he had reviewed the insurance policies in his safety deposit box and "I don't have any whole life, if that's the questions.  I -- I have some level term but I don't know if it has any cash value of not."  Dckt. No. 144, Tr. 2004 Examination, p. 14, lines 18-24.  Then, almost three months later, at his 2004 Examination, Debtor

---

[14]   Section 105(a) provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

✎AO 72A
(Rev. 8/82)

again testified that "Like I told you on [at the §341 meeting of creditors] I have term life insurance....It's all term. . . ." Dckt. No. 146, Tr. §341 meeting pp. 38 and 67, lines 3-23 and 10-22. Two months later, Debtor produced the whole life policy to the Trustee.  Close to three months after disclosing the existence of the whole life policy, Debtor finally amended his bankruptcy schedules to disclose the whole life policy and attempt to claim it as exempt.  See Dckt. Nos. 126 and 141.  The Trustee expended significant effort and discovered the policy had a cash value of $13,455.00.  Based upon these facts, the Trustee argues the Debtor is not entitled to exempt any portion of the policy.

At the hearing on the objections to the exemptions, Debtor testified credibly that he thought all his insurance policies were term policies without any cash surrender value and did not realize he had any whole life policies until he was examining the documents in his safe deposit box looking for various deeds the Trustee had requested in connection with some unrelated real estate.  Dckt. No. 166, Lines 5-21.  When he finally realized that he actually had a whole life policy he disclosed it to his attorney and the Trustee. Although it did take Debtor and Debtor's counsel more that 80 days to amend Debtor's schedules, given the totality of the circumstances I do not find that Debtor intentionally tried to hide this asset and decline to exercise any §105 powers to prevent Debtor from exempting

41

AO 72A
(Rev. 8/82)

a portion of this asset in accordance with O.C.G.A. §44-13-100(a)(9).

While not condoning Debtor's failure to disclose and promptly amend his schedules to list this insurance policy, I do not find he intentionally tried to conceal or fraudulently failed to disclose this policy. Debtor testified that he purchased the policy in the 1980s. He was not regularly receiving notices from the insurance company. Nevertheless, when he realized the true nature of the policy, and the significant distinction between a whole life and term policy, he disclosed its existence to the Trustee. There was no pending discovery regarding the insurance policies and I found his testimony about his realization of the true nature of the policy to be credible. The fact that the Debtor did not disclose his safe deposit box or the term insurance policies in his schedules also does not change this conclusion. Debtor freely disclosed the existence of the safe deposit box at the §341 meeting, and acknowledged it was an error for his schedules not to disclose the existence safe deposit box. Dckt. No. 144, Tr. Hr'g §341 meeting, pp. 16-17, lines 9-26 and lines 1-3.

Furthermore, the fact that the Trustee had to expend such efforts to discover the cash value of the policy does not change my conclusion. After disclosing the policy, the Debtor did not impede the Trustee's efforts. The age and nature of the policy and change

42

of company names made the Trustee's research more difficult, but there is no evidence the Debtor impeded the Trustee in any way in this regard. This is not a case where the Debtor intentionally failed to disclose an asset then attempted to exempt it upon the Trustee's discovery of the same.

In addition, Debtor's exemption theory is somewhat novel and complex. Upon discovery of the existence of the whole life policy, Debtor promptly disclosed the policy to the Trustee. Debtor's counsel formulated the legal basis for his claimed exemption before amending the schedules. Given the specific facts and circumstances of this case, I do not find this rises to the level to deny Debtor's attempt to exempt any portion of the policy. For these reasons, I find, the Debtor is entitled to exempt $2,000.00 pursuant to O.C.G.A. §44-13-100(a)(9).

For the foregoing reasons, it is hereby ORDERED that the Trustee's objection to Debtor's exemptions is SUSTAINED IN PART AND OVERRULED IN PART:

> (i)    Overruled to the extent Debtor can establish that sums in the Bank Accounts are traceable to payments under 38 U.S.C. §5301, 42 U.S.C. §407 and in compliance with <u>Citronelle</u>, if applicable; It is further ORDERED that Debtor shall submit his tracing documentation and arguments on the applicability and

43

application of <u>Citronelle</u> within 14 days of entry of this order;

(ii)    Sustained as to the sums in the Bank Accounts attributable to Debtor's Teacher Retirement are not exemptible;

(iii)   Overruled as to the IRA;

(iv)    Sustained as to Debtor's attempt to exempt the Hartford Annuity pursuant to O.C.G.A. §18-4-22;

(v)     Stayed pending resolution of the questions certified to the Georgia Supreme Court in <u>In re Cassell</u>, 688 F.3d 1291 (11th Cir. 2012) as to Debtor's attempt to exempt the annuity pursuant to O.C.G.A. §44-13-100; provided the conditions set forth in this Order are satisfied;

(vi)    Sustained as to Debtor's attempt to exempt the full cash surrender value of the whole life insurance policy; and

(vii)   Overruled as to Trustee's objection to Debtor's exemption of an amount not to exceed $2,000.00 in

44

value of the cash surrender value of the whole life insurance policy.

_Susan D. Barrett_

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia

this ___29th___ Day Of September 2012.

45