FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 11:37 am, Sep 30, 2013

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE:<br><br>THOMAS J. MCFARLAND<br><br>    Debtor<br>_____<br><br>A. STEPHENSON WALLACE<br><br>    Trustee/Objecting Party<br><br>v.<br><br>THOMAS J. MCFARLAND<br><br>    Debtor/Respondent<br>_____ | Chapter 7 Case<br>Number <u>11-10218</u> |

### FINAL OPINION AND ORDER[1]

This opinion and order addresses the remaining objection of the Chapter 7 Trustee ("Trustee") to Debtor's attempt to exempt his Hartford "Individual Flexible Premium Variable Annuity Contract ("Annuity") pursuant to O.C.G.A. §44-13-100(a)(2)(E).

### FINDINGS OF FACT[2]

In March 2006, several years before filing for bankruptcy and before the accident that precipitated this bankruptcy, Debtor purchased the Annuity for a one-time payment

---

[1] With this order all issues pending in the Trustee's Objection to Debtor's claim of exemption have now been ruled upon by this Court.

[2] The Findings of Fact from the Opinion and Order dated September 29, 2012, are incorporated herein. Dckt. No. 202.

of $150,000.00. Dckt. No. 150, Hr'g Tr. 9/7/11, p. 11:3-5; Hr'g 9/7/11, Trustee's Ex. 1, Dckt. No. 96.

The funds to purchase the Annuity came from regular monthly after tax contributions to a mutual fund account Debtor established while on active military duty. Dckt. No. 150, Hr'g Tr. 9/7/11, p. 11:20-23, 52:11-23; 68:1-2, 9-11. During the course of his active military service, Debtor was not eligible to contribute to a meaningful 401(k) type plan.[3] Id. at 43:11-13. Before retiring from the military, Debtor also considered purchasing the Survivor Benefit Plan ("SBP") to ensure his wife would continue to obtain his full military retirement pay upon his death. Id. at 46:15-25. Ultimately, Debtor did not obtain the SBP because it was too expensive. Id. at 47:9-10. As a result, upon Debtor's death, Debtor's wife will only be entitled to half of Debtor's military retirement. Id. at 69:7-9.

Debtor retired from the military in 1985. Id. at 64:24-25. In 2006, Debtor used the funds from his mutual fund to pay off a loan on a motorhome and to purchase the Annuity. Id. at 12:11-20, 10:25-11:2. At the time, he was sixty-four years old. Id. at 13:1-4. The benefit amount as of March 2011 was approximately $170,000.00. Hr'g on 9/7/11, Trustee's Ex. 2, Dckt. No. 96.

---

[3] At some point during Debtor's military service, the laws were changed to allow military personnel covered by a retirement plan to participate in an IRA, but such contributions were limited to $2,000.00 per year. Dckt. 150, Hr'g Tr. 9/7/11, p. 43:20-44:2.

2

The Annuity is structured as a flexible premium variable plan. Hr'g 9/7/11, Trustee's Ex. 1, Dckt. No. 96 at 3. The Annuity is a non-qualified plan, but taxes related to gains/losses are deferred. Dckt. No. 150, Hr'g Tr. 9/7/11, p. 55:1-9. It is a variable annuity which allows the Debtor to participate in the market and lock in high water marks while protecting against market fluctuations. Hr'g 9/7/11, Trustee's Ex. 1, Dckt. No. 96 at 3; Dckt. No. 150, Hr'g Tr. 9/7/11, 53:18-54:5. Debtor is both annuitant and the contract owner. Hr'g on 9/7/11, Trustee's Ex. 1, Dckt. No. 96 at 3. Presently, Debtor's wife is the beneficiary under the terms of the Annuity. Id. As owner and annuitant, Debtor is free to change the contract owner and the beneficiary. Id. at 8. Debtor also may cancel the Annuity contract at any time. Id. at 10; Dckt. No. 150, Hr'g Tr. 9/7/11, p. 58:3-4.

As currently structured, Debtor has deferred payment the maximum number of years until his ninetieth birthday in order to increase the death benefit to his wife, making the Annuity Commencement Date January 15, 2032. Hr'g on 9/7/11, Trustee's Ex. 1, Dckt. No. 96 at 3, 14; see also Dckt. No. 150, Hr'g Tr. 9/7/11, p. 15:8. As structured, the Annuity does not provide for fixed, regular payments to Debtor, but instead gives Debtor the ability to access the money at any time subject to withdrawal charges. Hr'g 9/7/11, Trustee's Ex. 1, Dckt. No. 96; Dckt. No. 150, Hr'g Tr. 9/7/11, p. 56:12-20, 57:25-58:2. In the first

3

seven years of the Annuity, Debtor could only withdraw a percentage of the premiums paid, subject to a diminishing charge. Hr'g on 9/7/11, Trustee's Ex. 1, Dckt. No. 96 at 3. Since the seven years have now lapsed, Debtor can withdraw all or some of the contract value and premiums paid subject to charges based upon the premiums paid and various charges assessed by Hartford. Id.

Debtor testified that he has neither taken any payments out of the Annuity, nor does he intend to do so in the future. Dckt. No. 150, Hr'g Tr. 9/7/11, p. 15:3-10. Debtor also testified that one of the initial reasons he began setting money aside in the mutual fund was to have an investment if they needed it upon his retirement. Id. at 68:21-69:1, 72:16-21. When Debtor continued to work after he retired from the military, he and his wife did not have an immediate need for the money. See Id. at 72:17-19. As a result, the primary purpose of the Annuity was to provide for his wife upon his death. Id. at 72:4-7. Michael McFarland, Debtor's son and financial advisor who sold Debtor the Annuity, testified that the Annuity was not created for wage replacement, but was for other purposes, specifically to provide a lifetime income benefit to Debtor's wife. Id. at 51:24-52:10; 53:7-17; 57:21-24; 59:22-60:3.

In his bankruptcy schedules, Debtor listed his total monthly income as $5,514.77, yet later admitted in testimony that his monthly income is actually closer to around $6,916.50. Dckt.

No. 10, Sch. I; Dckt. No. 150, Hr'g Tr. 9/7/11, p. 29:13-30:7. Debtor's current income consists of: Social Security payments, teacher retirement payments, military retirement payments, and veteran disability payments. Id. Debtor's schedules also list his monthly expenses as $4,957.13. Dckt. No. 10, Sch. J.

Upon Debtor's death, in addition to only being entitled to half of Debtor's military retirement, Debtor's wife would lose his teacher's retirement and disability payments. Dckt. No. 150, Hr'g Tr. 9/7/11, p. 69:7-9; 15:16-25. She also would lose her social security payments.[4] Together, these represent a drop of approximately $4,000.00/month in her expected income upon Debtor's death. See id. at 17:6-17.

Trustee filed an objection to Debtor's initial attempt to exempt the Annuity pursuant to O.C.G.A. §18-4-22. Dckt. No. 23. After notice and a hearing, I held Debtor could not exempt the Annuity under O.C.G.A. §18-4-22,[5] but stayed the determination of whether Debtor could exempt the Annuity under O.C.G.A. §44-13-

---

[4] Currently Debtor's wife receives a small social security payment. See Dckt. No. 150, Hr'g Tr. 9/7/11, p. 69:7-9. She did not work outside the home while they were raising their family. However, she owns her own annuity worth approximately $150,000.00 and has a qualified IRA worth $14,000.00. Dckt. No. 150, Hr'g Tr. 9/7/11, pp. 61:1-63:7, 25:13; Dckt. No. 11 at p. 10.

[5] Furthermore, the Annuity cannot be excluded from property of the bankruptcy estate under O.C.G.A. §18-4-22 because it does not involve "[f]unds or benefits from a pension or retirement program as defined in 29 U.S.C. Section 1002(2)(A) or funds or benefits from an individual retirement account as defined in Section 408 or 408A of the United States Internal Revenue Code of 1986, as amended. . . ." O.C.G.A. §18-4-22.

5

100(a)(2)(E) until the Georgia Supreme Court responded to the certified questions related to annuities in In re Cassell, 688 F.3d 1291 (11th Cir. 2012). See Silliman v. Cassell, 738 S.E.2d 606 (Ga. 2013); In re Cassell, 713 F.3d 81 (11th Cir. 2013).

## CONCLUSIONS OF LAW

As part of the fresh start concept, the Bankruptcy Code allows debtors to exempt certain property from the bankruptcy estate. As many courts have recognized, the purpose of the exemptions is to provide a debtor with a fresh start, and as a result, exemptions are liberally construed in favor of the debtor. See In re Michael, 339 B.R. 798, 801 (Bankr. N.D. Ga. 2005). The burden is on the objecting party, the Trustee in this case, to establish by a preponderance of the evidence that the exemption is not properly claimed. FED. R. BANKR. P. 4003(c); Silliman, 738 S.E.2d at 612.

As discussed in the previous order, Georgia state law exemptions are applicable. See Dckt. No. 202 at p. 8. Specifically, Debtor argues the Annuity is exempt under O.C.G.A. §44-13-100(a)(2)(E) which provides, in relevant part, that for purposes of bankruptcy, a debtor may exempt his:

> right to receive
>
> [a] payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]

O.C.G.A. §44-13-100(a)(2)(E). For a Debtor to exempt an annuity under this provision, the annuity must meet three requirements: (1) it must be an annuity as the term is used in O.C.G.A. §44-13-100(a)(2)(E); (2) the annuity payments to Debtor must be 'on account of illness, disability, death, age, or length of service'; and (3) the payments must be reasonably necessary to the support of the debtor or his dependents. Id.; see also Silliman, 738 S.E.2d at 609. The Trustee objects to Debtor's proposed exemption, arguing the Annuity does not meet the first or third requirements – that it is not the type of annuity protected by O.C.G.A. §44-13-100(a)(2)(E) and that it is not reasonably necessary for the support of Debtor or his dependents. Dckt. No. 241 at p. 1.

The plain meaning of legislation is conclusive unless the literal application at a statue would produce a result demonstrably at odds with the intention of the drafters. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); Hendry v. Hendry, 734 S.E.2d 46, 48 (Ga. 2012)(when considering the meaning of a statute "we look first to the text of the statute, and if the text is clear and unambiguous, we look no further, attributing to the statute its plain meaning.")(brackets omitted). Black's Law Dictionary defines "annuity" as "[a]n obligation to pay a stated sum, usually monthly or annually, to a stated recipient." Black's Law Dictionary 104 (9th ed. 2004). It further defines a "variable

7

AO 72A
(Rev. 8/82)

O.C.G.A. §44-13-100(a)(2)(E). For a Debtor to exempt an annuity under this provision, the annuity must meet three requirements: (1) it must be an annuity as the term is used in O.C.G.A. §44-13-100(a)(2)(E); (2) the annuity payments to Debtor must be 'on account of illness, disability, death, age, or length of service'; and (3) the payments must be reasonably necessary to the support of the debtor or his dependents. Id.; see also Silliman, 738 S.E.2d at 609. The Trustee objects to Debtor's proposed exemption, arguing the Annuity does not meet the first or third requirements – that it is not the type of annuity protected by O.C.G.A. §44-13-100(a)(2)(E) and that it is not reasonably necessary for the support of Debtor or his dependents. Dckt. No. 241 at p. 1.

The plain meaning of legislation is conclusive unless the literal application at a statue would produce a result demonstrably at odds with the intention of the drafters. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); Hendry v. Hendry, 734 S.E.2d 46, 48 (Ga. 2012)(when considering the meaning of a statute "we look first to the text of the statute, and if the text is clear and unambiguous, we look no further, attributing to the statute its plain meaning.")(brackets omitted). Black's Law Dictionary defines "annuity" as "[a]n obligation to pay a stated sum, usually monthly or annually, to a stated recipient." Black's Law Dictionary 104 (9th ed. 2004). It further defines a "variable

7

O.C.G.A. §44-13-100(a)(2)(E). For a Debtor to exempt an annuity under this provision, the annuity must meet three requirements: (1) it must be an annuity as the term is used in O.C.G.A. §44-13-100(a)(2)(E); (2) the annuity payments to Debtor must be 'on account of illness, disability, death, age, or length of service'; and (3) the payments must be reasonably necessary to the support of the debtor or his dependents. Id.; see also Silliman, 738 S.E.2d at 609. The Trustee objects to Debtor's proposed exemption, arguing the Annuity does not meet the first or third requirements – that it is not the type of annuity protected by O.C.G.A. §44-13-100(a)(2)(E) and that it is not reasonably necessary for the support of Debtor or his dependents. Dckt. No. 241 at p. 1.

The plain meaning of legislation is conclusive unless the literal application at a statue would produce a result demonstrably at odds with the intention of the drafters. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); Hendry v. Hendry, 734 S.E.2d 46, 48 (Ga. 2012)(when considering the meaning of a statute "we look first to the text of the statute, and if the text is clear and unambiguous, we look no further, attributing to the statute its plain meaning.")(brackets omitted). Black's Law Dictionary defines "annuity" as "[a]n obligation to pay a stated sum, usually monthly or annually, to a stated recipient." Black's Law Dictionary 104 (9th ed. 2004). It further defines a "variable

7

AO 72A
(Rev. 8/82)

annuity" as "[a]n annuity that makes payments in varying amounts depending on the success of the underlying investment strategy." Id. at 104-05. The Georgia Supreme Court noted that this definition is consistent with how the Georgia legislature has defined "annuity" in its other statutes. Silliman, 738 S.E.2d at 609; see also O.C.G.A. §33-28-1(1) ("'Annuity' means a contract by which one party in return for a stipulated payment or payments promises to pay periodic installments for a stated certain period of time or for the life or lives of the person or persons specified in the contract"); O.C.G.A. §47-2-1(3) (defining 'annuity' as "annual payments for life derived from the accumulated contributions of a member"); O.C.G.A. §47-3-1(3) (same).

Additional guidance is needed in defining the term "annuity" when considering the exemption statutes. See Silliman, 738 S.E.2d at 610. "[T]he United States Supreme Court has defined an annuity as 'an amount payable yearly, or at other regular intervals for a certain or uncertain period of time.'" Id. (citing Rousey v. Jacoway, 544 U.S. 320, 330, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005)). The Georgia Supreme Court concluded that for purposes of O.C.G.A. §44-13-100(a)(2)(E) "an annuity is an obligation to pay an amount at regular intervals for a certain or uncertain period of time." Silliman, 738 S.E.2d at 610.

Nevertheless, this definition is not intended to exempt all annuities; rather it exempts "only those payments due under a

⁂AO 72A
(Rev. 8/82)

'pension, annuity, or similar plan or contract.'" Id. (quoting O.C.G.A. §44-13-100(a)(2)(E)). Courts have limited the scope of the exemption to mean that a debtor's interest in an annuity may qualify for the exemption if it is intended to "provide income that substitutes for wages,"[6] and if it is not a typical savings account. Rousey, 544 U.S. at 331. To make that determination, the Georgia Supreme Court directed courts to consider the nature of the annuity contract and the circumstances surrounding the purchase of the annuity. Silliman, 738 S.E.2d at 610-11. Courts consider a variety of non-exclusive factors in making this inquiry, including:

* Were the payments designed or intended to be a wage substitute?

* Were the contributions made over time? The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long standing retirement strategy, not merely a recent change in the nature of the asset.

* Do multiple contributions exist? Investments purchased in isolation, outside the context of workplace contributions, may be less likely to qualify as exempt.

* What is the return on investment? An investment which returns only the initial contribution with earned interest or income is more likely to be a nonexempt investment. In contrast, investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan. That is, will the debtor enjoy a windfall if she outlives her life expectancy? Is she penalized if she dies prematurely?

---

[6] The U.S. Supreme Court defined "wages" as compensation earned as hourly or salary income. Rousey, 544 U.S. at 329.

9

* What control may the debtor exercise over the asset? If the debtor has discretion to withdraw from the corpus, then the contract most closely resembles a nonexempt investment.

* Was the investment a prebankruptcy planning measure? In this regard, the court may examine the timing of the purchase of the contract in relation to the filing of the bankruptcy case.

Goodman v. Bramlette (In re Bramlette), 333 B.R. 911, 921 (Bankr. N.D. Ga. 2005) (citing In re Andersen, 259 B.R. 687, 691-92 (B.A.P. 8th Cir. 2001)).

After considering these factors, I find the Annuity does not fit within the scope of O.C.G.A. §44-13-100(a)(2)(E). The Annuity was not intended or designed to be a wage substitute. By electing to defer payment the maximum number of years, Debtor made it clear he did not intend for the Annuity income to act as a replacement for wages. In fact, at the time Debtor purchased the Annuity, he and his wife had other sources of income through his part time jobs. Debtor's schedules show that Debtor's income actually exceeds Debtor's expenses, and Debtor testified that he has not relied on payments from the Annuity as necessary for his support and does not intend to do so during his lifetime. Dckt. No. 10, Sch. I and Sch. J.; Dckt. No. 150, Hr'g Tr. 9/7/11, p. 15:3-10. Moreover, Debtor's financial advisor and son testified that the Annuity was not created for wage replacement. While Debtor may have intended the Annuity to provide security for his wife upon his death, the statute makes clear that the exemption

AO 72A
(Rev. 8/82)

is limited to "*the debtor's* right to receive . . . payment . . . ." O.C.G.A. §44-13-100(a)(2)(E)(emphasis added).

Furthermore, under O.C.G.A. §44-13-100(a)(2)(E) "an annuity is an obligation to pay an amount at regular intervals for a certain or uncertain period of time." Silliman, 738 S.E.2d at 610. Debtor acknowledges that the Annuity funds are for his wife in the event of his death as an income supplement. Unlike the annuity in Silliman, Debtor in this case has not elected a fixed sum annuity. See Id. at 608. While upon Debtor's death, his wife may elect annuity options, she is not required to do so. She can opt to take the death benefits in a lump sum. This does not contemplate a payment at regular intervals.

The nature of the investment also supports the conclusion that this Annuity is nonexempt. It is a variable annuity adjusting to the market. This is more in line with an investment policy, rather than a wage replacement. See In re Cassell, 443 B.R. 200, 205-06 (Bankr. N.D. Ga. 2010) (aff'd 713 F.3d 81 (11th Cir. 2013)) (noting that cases in which the annuity at issue was a variable annuity or in which the annuity carried a guaranteed rate of return were more "investment like").

Debtor's ability to exercise control over the Annuity further supports the Trustee's contention. "What is relevant and legally significant . . . is the nature of the plan actually selected and the level of control a payee retains over the funds and payments thereafter." Silliman, 738 S.E.2d at 611-12. In

11

Silliman, the debtor was not authorized to withdraw any funds from her annuity, cancel the annuity, or change the payment terms of the agreement, and the Georgia Supreme Court found that such limited control was insufficient to render the annuity nonexempt. Id. at 608, 611-12. Conversely, in In re Michael, the court found an annuity to be nonexempt where the debtor retained authority to assign, surrender, or amend the annuity contract, to exercise any right and receive any benefit under the contract, and to change the maturity date of the annuity at any time provided the debtor did not defer payments beyond the year she turns eight-five. In re Michael, 339 B.R. at 805-06. While a limited amount of authority over an annuity does not change the underlying character of the annuity as a plan intended to provide for the substitute of wages, discretion to withdraw the corpus of the annuity and decide at a later date to receive a fixed return on the investment may lead to the inference that the annuity is a nonexempt investment. See Silliman, 738 S.E.2d at 612; see also Bramlette, 333 B.R. at 921.

Here, Debtor is the annuitant and the owner of the Annuity. Hr'g on 9/7/11, Trustee's Ex. 1, Dckt. No. 96 at p. 3. He retains full control and authority to change the contract owner or beneficiary at any time and has "the sole power to exercise all the rights, options, and privileges granted by [the annuity contract] or permitted by [Hartford]. . . ." Id. at p. 8. Unlike the Silliman debtor, the payments have not begun in

12

this case, Debtor retains control over the Annuity and its corpus, including withdrawing all or part of the funds. Id. at p. 3, 10; see also In re Cassell, 443 B.R. 200, 209 (Bankr. N.D. Ga. 2010) (aff'd 713 F.3d 81 (11th Cir. 2013))(where a payment start date or payment option has not yet been selected "the freedom available to the Debtor at the time the petition was filed suggests a level of control inconsistent with a retirement program."). Debtor also has the right to terminate the contract and receive the surrender value of the contract taken in the form of a cash settlement. Hr'g on 9/7/11, Trustee's Ex. 1, Dckt. No. 96 at p. 10. Given the level of control Debtor retains and the nature and structure of the Annuity, the Annuity here much more closely resembles a nonexempt investment.

While it is true the Annuity imposes early withdraw charges, and thus, Debtor's ability to withdraw from the corpus of the Annuity is not completely unfettered, there is a distinction between the penalties and features of the Annuity under these circumstances and those of other accounts such as in Rousey. See Rousey v. Jacoway, 544 U.S. 320, 332, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005)(finding a tax penalty for withdrawal of funds before age 59½ to substantially restrict debtors' access to funds). Debtor was sixty-four years old when he purchased the Annuity, and he elected to defer payment on the Annuity until age ninety. The withdrawal charges associated with the Annuity are based on premiums paid and are not of the nature contemplated in

13

Rousey. See In re Michael, 339 B.R. at 806 (noting that the U.S. Supreme Court in Rousey placed value on the deterrence effect of the penalty as distinguished from penalties that are less likely to discourage a debtor from withdrawing funds before the maturity date). For these reasons, I find Rousey to be distinguishable. The fact that Debtor is prevented from withdrawing more than six percent per year if he wants to maintain the guaranteed return to his wife does not change this conclusion.

Clearly putting money aside for retirement is to be encouraged, and there is no question of Debtor's good faith in purchasing the Annuity. Nevertheless, the Georgia legislature weighted the "fresh start" concept against creditors' needs when it adopted the exemptions. Not all investment accounts are exemptible. For example, certain non-qualified retirement plans, life insurance policies and savings accounts are all non-exempt under Georgia's exemption statute. The nature of this Annuity and Debtor's control over the Annuity align it outside the scope of the Georgia exemptions. In this regard, the Annuity is no different than a non-qualified retirement plan, savings account or insurance policy. As noted in In re Michael:

> Even though the Court does not question the good faith of Debtor, a general rule providing that annuities purchased by debtors are exempt from the claims of creditors if they are established as retirement vehicles sanctions abuse. Allowing an annuity contract established by a debtor to be exempt without some requirements that it be similar to other qualified retirement plans would

14

>> provide debtors with a means of shielding assets from creditors prebankruptcy by purchasing annuities under the facade of retirement planning. The Annuity Contract in this case is no different than a savings account created on the premise that the funds placed in the account are to provide Debtor with future income since Debtor can withdraw funds from the Annuity Contract at anytime with only a minimal penalty. Exempting an annuity of this nature would open the doors for abuse by debtors and undermine the integrity of the bankruptcy process.

In re Michael, 339 B.R. at 806-07.

Because I find the Annuity fails to qualify as an annuity as that term is used in O.C.G.A. §44-13-100(a)(2)(E), I do not reach whether the payments are reasonably necessary to support the Debtor and his dependents.

For these reasons, the Trustee's objection to Debtor's attempt to exempt the Annuity pursuant to O.C.G.A. §44-13-100(a)(2)(E) is **ORDERED SUSTAINED**.

_____
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia,

this 27th day of September, 2013.